```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA,     :
                              :
          - v. -              :    07 Cr. 1173 (CM)
                              :
RENE J. GARCIA, JR.,          :
                              :
          Defendant.          :
                              :
- - - - - - - - - - - - - - - x
```

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO THE DEFENDANT'S PRETRIAL MOTION**

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

ANNA M. SKOTKO
Assistant United States Attorney
    -Of Counsel-

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.   Offense Conduct . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.  THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO
    SUPPRESS . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.   The Defendant's Arrest Was Based on Probable
            Cause . . . . . . . . . . . . . . . . . . . . . . 4

        B.   An Evidentiary Hearing is Not Warranted . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 11

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to the pretrial motion of Rene J. Garcia, Jr., the defendant.

The defendant seeks to suppress evidence seized by arresting officers, or a hearing to determine the admissibility of the evidence. The defendant's motion is meritless and should be denied without a hearing.

**BACKGROUND**

**I.   OFFENSE CONDUCT**

The one-count Indictment charges the defendant with violating sections 922(g)(1) and 924(e) of Title 18, United States Code, by willfully and knowingly possessing a firearm which previously had been shipped and transported in interstate and foreign commerce, after having had three previous convictions for a violent felony or a serious drug offense, committed on occasions different from one another, to wit, (i) a conviction on or about December 5, 1994, in New York Supreme Court, Bronx County, for attempted robbery in the first degree, a Class C felony; (ii) a conviction on or about December 5, 1994, in New York Supreme Court, Bronx County, for attempted criminal sale of a controlled substance in the third degree, a Class C felony; and (iii) a conviction on or about November 30, 1989, in New York Supreme Court, Bronx County, for attempted criminal sale of a

1

controlled substance in the third degree, a Class C felony. <u>See</u> Indictment.

The defendant was arrested on October 12, 2007. According to the sworn Affidavit of Mount Vernon Police Department ("MVPD") Detective Chris DiMase (the "Affidavit" or "DiMase Aff." attached hereto as Exhibit A), on or about October 12, 2007, officers received information from a confidential informant (the "CI") that an individual later identified as Rene J. Garcia, Jr., the defendant, was unlawfully possessed and was attempting to sell a handgun. The CI reported that the CI had seen and spoken with the defendant earlier that day, and that the defendant had shown the CI a handgun and asked the CI if the CI wanted to buy the gun. As set forth in the Affidavit, information provided by the CI to date has proved to be reliable and has been corroborated by independent evidence. DiMase Aff. ¶ 2.

The CI met Detective DiMase at MVPD headquarters that evening, where the CI made a monitored, consensual phone call to the defendant. DiMase Aff. ¶ 3. During the call, which was made in the presence of officers and translated contemporaneously from Spanish to English, the CI arranged to meet the defendant at a gas station near the intersection of North Bond Street, Lincoln Avenue and Oak Street in Mount Vernon, New York (the "Gas Station"), later that evening to purchase the handgun from the

defendant for $500.  DiMase Aff. ¶ 3.  The defendant indicated to the CI that he planned to take a cab to the Gas Station.  DiMase Aff. ¶ 3.  The CI described the defendant to the MVPD officers as male, Hispanic, bald, and in his late thirties.  DiMase Aff. ¶ 3.

     Following the call, MVPD officers and the CI traveled to the area of the Gas Station, where officers set up surveillance.  DiMase Aff. ¶ 4.  The CI's car was parked across the street from the Gas Station, and the CI waited at the Gas Station alone.  DiMase Aff. ¶ 4.  At approximately 10:15 p.m., an individual who matched the description provided by the CI, later identified as the defendant, Rene J. Garcia, Jr., arrived at the Gas Station in a black livery cab.  DiMase Aff. ¶ 4.  The defendant got out of the cab alone, holding a plastic bag, and met the CI.  DiMase Aff. ¶ 4.  The CI and the defendant, who was carrying the plastic bag, began walking across the street, toward the CI's car.  DiMase Aff. ¶ 4.

     Officers approached the defendant and the CI in an unmarked car, and Detective DiMase got out of the passenger side of the car with his gun drawn and instructed the defendant to stop and put his hands over his head.  DiMase Aff. ¶ 5.  The defendant dropped the plastic bag and said that there was a gun in the bag and that he had found it in the taxi.  DiMase Aff. ¶ 5.

The officers arrested the defendant, retrieved the plastic bag, and found an open cereal box containing a handgun inside the bag. DiMase Aff. ¶ 6. The arresting officers advised the defendant of his <u>Miranda</u> rights and transported him to MVPD headquarters for processing. DiMase Aff. ¶ 6.

Thereafter, a grand jury sitting in the Southern District of New York returned a one-count Indictment charging the defendant with unlawfully, willfully and knowingly possessing a firearm which previously had been shipped and transported in interstate and foreign commerce, after having had three previous convictions for a violent felony or a serious drug offense, committed on occasions different from one another, in violation of Title 18, United States Code, sections 922(g)(1) and 924(e).

**ARGUMENT**

I. **THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO SUPPRESS**

    A. **The Defendant's Arrest Was Based on Probable Cause**

In a one-paragraph argument, the defendant claims that the evidence obtained at the time of his arrest should be suppressed because it was seized incident to a warrantless "encounter." (Br. at 1). The Court should deny the motion because the facts known to the officers at the time of the defendant's arrest, as described in the Affidavit, undoubtedly establish that the defendant's arrest was based on probable cause

4

and the handgun and other evidence was lawfully seized in a search incident to arrest.

The Second Circuit has held that law enforcement officials have probable cause to arrest absent a warrant "when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Boyd v. City of New York, 336 F.3d 72, 75-76 (2d Cir. 2003); see United States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990) (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949)); Illinois v. Gates, 462 U.S. 213, 230-32 (1983); United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983). "Probable cause does not require absolute certainty," Boyd, 336 F.3d at 76, or "an actual showing of [criminal] activity." United States v. Bakhtiari, 913 F.2d 1053, 1062 (2d Cir. 1990). Rather, probable cause requires "only a probability or substantial chance of criminal activity." Id. at 1062. Thus, it is "not necessary to make a prima facie showing of criminal activity or to demonstrate that it is more probable than not that a crime has been or is being committed." United States v. Gonzales, 864 F. Supp. 375, 377 (S.D.N.Y. 1994) (quoting United Stated v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987)).

Probable cause is a "fluid concept - turning on the assessment of probabilities in particular factual contexts,"

rather than a "neat legal standard." Illinois v. Gates, 462 U.S. at 232; Brinegar v. United States, 338 U.S. 160 at 176; United States v. Taormina, 1998 WL 702341, at *2 (S.D.N.Y. Oct. 8, 1998). The evidence gathered must be viewed and weighed "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Gates, 462 U.S. at 231.

Based on the information known to officers at the time of the defendant's arrest, there was probable cause to arrest the defendant. According to the Affidavit, arresting officers were aware of the following, among other things: (1) on October 12, 2007, a reliable, registered CI reported that earlier that day an individual later identified as the defendant, Rene J. Garcia, Jr., had shown the CI a handgun and offered to sell the handgun to the CI, see DiMase Aff. ¶ 2; (2) during a monitored, consensual phone call placed by the CI later that day, the defendant agreed to meet the CI that evening at the Gas Station in Mount Vernon, New York, to sell the CI a handgun for $500, see DiMase Aff. ¶ 3; (3) the defendant had indicated during the call that he planned to take a cab to the Gas Station, see DiMase Aff. ¶ 3; (4) that evening, an individual matching the description provided by the CI, the defendant, arrived at the Gas Station in a livery cab, see DiMase Aff. ¶ 5; (5) the defendant was carrying a plastic bag when he exited the cab and met the CI at the Gas Station, see DiMase Aff. ¶ 5; (5) the CI and the defendant, who

was carrying the plastic bag, began walking across the street, toward the CI's car, see DiMase Aff. ¶ 5; and (6) when the officers approached the defendant and the CI, the defendant dropped the bag and stated that there was a gun in the bag and that he had found it in the taxi, see DiMase Aff. ¶ 6.[1]

The Affidavit makes clear that the information provided by the CI was corroborated by the arresting officers' independent observations on October 12, 2007. This evidence, taken as a whole, was clearly sufficient "to warrant a person of reasonable caution in the belief that an offense had been committed by the person to be arrested." Gonzalez, 835 F.2d at 450-51 (citing Draper v. United States, 358 U.S. 307, 313 (1959)(finding probable cause to arrest and search defendant after informant told agents that defendant would be returning on a train with heroin in a bag, and agents witnessed person matching description)); see also United States v. Gaviria, 805 F.2d 1108, 1115 (2d Cir. 1986) (information provided by an informant and corroborated by the observations of the arresting officers provided sufficient basis for probable cause to arrest); Gonzalez, 825 F.2d at 451 (finding probable cause to arrest and search after, as predicted by the informant, the defendant met

---

[1] These facts do not represent all of the facts known to the officers at the time of the arrest, but only those facts that are set forth in the Affidavit.

7

another person and drove to an airport to meet a third person to pick up drugs).

It is well-established that a lawful search incident to an arrest may include a "search of the arrestee's person and the area 'within his immediate control,'" which has been construed to mean "the area from which he might gain possession of a weapon or destructible evidence." Chimel v. California, 395 U.S. 752, 762-63 (1969); see also United States v. Hernandez, 941 F.2d 133 (2d Cir. 1991) (referring to area within immediate control as the "grab area" and holding that search of the edge of a mattress of a bed where the officer found a gun after handcuffing the detainee was lawful).[2] When the defendant dropped the plastic bag, he said that there was a gun in the bag and the bag remained within the "grab area" of the defendant. Accordingly, the officers' seizure and examination of the contents of the plastic

---

[2] Even in circumstances where the challenged search preceded the arrest, the search is lawful when the police had probable cause to arrest the defendant before the search and "the formal arrest followed quickly on the heels of the challenged search." Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) (holding that it was not "particularly important that the search preceded the arrest" when the police had probable cause to arrest the defendant before the search and "the formal arrest followed quickly on the heels of the challenged search"). Furthermore, here, the officers were entitled to examine the contents of the bag in a protective search for weapons. See Terry v. Ohio, 392 U.S. 1, 27 (1968); United States v. Alexander, 907 F.2d 269, 272 (2d Cir. 1990) ("A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists."); McCardle v. Addad, 131 F.3d 43, 48 (2d Cir. 1997) (same).

8

bag constituted a lawful search of the area from which the defendant might gain possession of a weapon.

As the Affidavit makes clear, the defendant's arrest was based on probable cause, and the handgun and other evidence was seized pursuant to a lawful search incident to arrest, the defendant's motion to suppress should be denied.

### B.  **An Evidentiary Hearing is Not Warranted**

The defendant argues in the alternative that he is entitled to an evidentiary hearing.  It is well settled in the Second Circuit that a defendant seeking to suppress evidence bears the burden of demonstrating that there are disputed issues of fact that would justify an evidentiary hearing.  See United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967).  "A hearing is not required if the defendant's statements are general, conclusory or based on conjecture." United States v. Viscioso, 711 F. Supp. 740, 745 (S.D.N.Y. 1989); see also United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992) ("[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question.").

Here, the defendant's two-paragraph affidavit has failed to satisfy that burden.  The defendant's claim that he was "not engaged in any illegal or suspicious activity at the time of

9

his arrest" is entirely conclusory and thus insufficient to warrant a hearing.[3] See Viscioso, 711 F. Supp. at 745 (denying hearing where defendant merely submitted conclusory affidavit declaring his innocence because such affidavit fails to "show that disputed issues of material fact exist") (quoting United States v. Castellano, 610 F. Supp. 1359, 1439 (S.D.N.Y. 1985)).

Even assuming that the defendant's statement is true – which it is not – the defendant has not disputed what the officers knew or observed prior to his arrest.  The defendant's affidavit does not concern the officers' belief that probable cause existed to arrest the defendant, and thus does not raise a material, factual issue which, if proven, would have required the granting of the relief requested.  See United States v. Carrasquillo, 2000 WL 45708, at *2 (S.D.N.Y. Jan. 19, 2000) (holding that defendant was not entitled to evidentiary hearing because he did not "state sufficient facts which, if proven, would have required the granting of the relief requested") (citing United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969).  Thus, under the relevant standards, the defendant is not entitled to a hearing.

---

[3] The defendant's claim that he was not engaged in any illegal activity is undermined by his own statement – which he has not contested – that the bag he was carrying contained a gun. See DiMase Aff. ¶ 5.  The Affidavit of Detective DiMase also establishes that the defendant's arrival at the Gas Station, carrying a bag, subsequent to having a conversation with the CI about selling a handgun to the CI, constituted illegal and suspicious activity.

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny the defendant's motion to suppress without a hearing.

Dated:   White Plains, New York
         March 21, 2008

>Respectfully submitted,
>
>MICHAEL J. GARCIA
>United States Attorney for the
>Southern District of New York
>
>By: ___/s/ Anna Skotko_____
>Anna M. Skotko
>Assistant United States Attorney
>(914) 993-1939

## AFFIRMATION OF SERVICE

ANNA M. SKOTKO, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York. That, on March 21, 2008, I caused copies of the Government's Memorandum of Law in Opposition to the Defendant's Pretrial Motion to be delivered by ECF and by Hand to:

>Paul E. Davison, Esq.
>Federal Defenders of New York, Inc.
>300 Quarropas Street, Room 260
>White Plains, New York 10601

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:   White Plains, New York
         March 21, 2008

*[signature]*
Anna M. Skotko

# EXHIBIT A

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x
                                  :
UNITED STATES OF AMERICA          :
                                  :
         - v -                    :
                                  :    07 Cr. 1173 (CM)
RENE J. GARCIA, JR.,              :
                                  :
              Defendant.          :
                                  :
- - - - - - - - - - - - - - - - -x
STATE OF NEW YORK                 )
COUNTY OF WESTCHESTER             :    ss.:
SOUTHERN DISTRICT OF NEW YORK     )
```

CHRIS DIMASE, pursuant to Title 28, United States Code, Section 1746, hereby declares:

1. I am employed as a Detective with the Mount Vernon Police Department ("MVPD") and have been employed as a detective for 10 years. Because this affidavit is submitted for the limited purpose of demonstrating probable cause, I have not included details of every aspect of the investigation. Where I relate statements, conversations, and actions of others, those statements, conversations, and actions are related in substance and in part, except where otherwise indicated.

2. On or about October 12, 2007, I received information from a registered MVPD confidential informant (the "CI") that an individual later identified as RENE J. GARCIA, JR., the defendant, was unlawfully possessing and attempting to sell a handgun. The CI reported that he or she had seen and spoken with GARCIA earlier that day, and that GARCIA had shown the CI a handgun and asked the CI if the CI wanted to buy the gun.

Information provided by the CI to date has proved to be reliable and has been corroborated by independent evidence.

3. The CI met me at MVPD headquarters that evening. At MVPD headquarters, the CI made a monitored, consensual phone call to GARCIA, which was translated contemporaneously by another MVPD officer in my presence. During the call, the CI arranged to meet GARCIA at a gas station near the corner of North Bond Street, Lincoln Avenue and Oak Street in Mount Vernon, New York (the "Gas Station") later that evening to purchase the handgun for $500. GARCIA indicated that he planned to take a cab to the Gas Station. The CI described GARCIA as male, Hispanic, and bald, and in his late thirties.

4. Following the call, the CI, other MVPD officers and I traveled to the area of the Gas Station. The other officers and I set up surveillance in the area of the Gas Station. The CI's car was parked across the street from the Gas Station, and the CI waited at the Gas Station alone.

5. At approximately 10:15 p.m., I observed an individual who matched the description provided by the CI and was later identified as GARCIA arrive at the Gas Station in a black livery cab. GARCIA got out of the car alone, holding a plastic bag, and met the CI. The CI and GARCIA, who was carrying the plastic bag, began walking across the street, toward the CI's car.

6. Another MVPD officer and I approached GARCIA and the CI in an unmarked car. I got out of the passenger side of the car, with my gun drawn and instructed GARCIA to stop and put his hands over his head. In response, GARCIA dropped the plastic bag and said that there was a gun in the bag and that he had found it in the taxi.

7. I arrested GARCIA. The other officer retrieved the plastic bag, handed it to me, and I found an open cereal box containing a handgun inside the bag. I advised Garcia of his Miranda rights, and the other arresting officer and I drove Garcia to MVPD headquarters.

8. I declare under penalty of perjury that the foregoing is true and correct, pursuant to Title 28, United States Code, Section 1746.

Dated:    White Plains, New York
          March 21, 2008

_____
CHRIS DIMASE
Detective
Mount Vernon Police Department

3