UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

UNITED STATES OF AMERICA

- v -  07 Cr. 1173 (CM)

RENE J. GARCIA, JR.,

        Defendant.

---

### DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED BY LAW ENFORCEMENT

McMahon, J.:

Defendant is charged in a one-count Indictment with violating sections 922(g)(1) and 924(e) of Title 18, United States Code, by willfully and knowingly possessing a firearm which previously had been shipped and transported in interstate and foreign commerce, after having had three previous convictions for a violent felony or a serious drug offense, committed on occasions different from one another. See Indictment.

Defendant has filed a motion asking the Court "to suppress evidence – including but not limited to an inoperable handgun – which was seized by police officers from the City of Maount Vernon incident to a warantless encounter with the defendant on October 12, 2007." Def. Memo at 1. Defendant asks that in the alternative that the Court at least "hold a hearing on the admissibility of the evidence." Def. Memo at 2.

Background

The defendant was arrested on October 12, 2007. According to the sworn Affidavit of Mount Vernon Police Department Detective Chris DiMase offered in opposition to defendant's motion,

or about October 12, 2007, officers received information from a confidential informant (the "CI") that an individual, later identified as Rene J. Garcia, Jr., unlawfully possessed and was attempting to sell a handgun. The CI reported that the CI had seen and spoken with the defendant earlier that day, and that the defendant had shown the CI a handgun and asked the CI if the CI wanted to buy the gun. As set forth in the Affidavit, information provided by the CI to date has proved to be reliable and has been corroborated by independent evidence. DiMase Aff. ¶ 2.

The CI met Detective DiMase at MVPD headquarters that evening, where the CI made a monitored, consensual phone call to the defendant. DiMase Aff. ¶ 3. During the call, which was made in the presence of officers and translated contemporaneously from Spanish to English, the CI arranged to meet the defendant at a gas station near the intersection of North Bond Street, Lincoln Avenue and Oak Street in Mount Vernon, New York (the "Gas Station"), later that evening to purchase the handgun from the defendant for $500. DiMase Aff. ¶ 3. The defendant indicated to the CI that he planned to take a cab to the Gas Station. DiMase Aff. ¶ 3. The CI described the defendant to the MVPD officers as male, Hispanic, bald, and in his late thirties. DiMase Aff. ¶ 3.

Following the call, MVPD officers and the CI traveled to the area of the Gas Station, where officers set up surveillance. DiMase Aff. ¶ 4. The CI's car was parked across the street from the Gas Station, and the CI waited at the Gas Station alone. DiMase Aff. ¶ 4. At approximately 10:15 p.m., an individual who matched the description provided by the CI, later identified as the defendant, Rene J. Garcia, Jr., arrived at the Gas Station in a black livery cab. DiMase Aff. ¶ 4. The defendant got out of the cab alone, holding a plastic bag, and met the CI. DiMase Aff. ¶ 4. The CI and the defendant, who was carrying the plastic bag, began walking across the street, toward the CI's car. DiMase Aff. ¶ 4.

Officers approached the defendant and the CI in an unmarked car, and Detective DiMase got out of the passenger side of the car with his gun drawn and instructed the defendant to stop and put his hands over his head. DiMase Aff. ¶ 5. The defendant dropped the plastic bag and said that there was a gun in the bag and that he had found it in the taxi. DiMase Aff. ¶ 5.

The officers arrested the defendant, retrieved the plastic bag, and found an open cereal box containing a handgun inside the bag. DiMase Aff. ¶ 6. The arresting officers advised the defendant of his Miranda rights and transported him to MVPD headquarters for processing. DiMase Aff. ¶ 6.

Thereafter, a grand jury sitting in the Southern District of New York returned a one-count Indictment charging the defendant with unlawfully, willfully and knowingly possessing a firearm which previously had been shipped and transported in interstate and foreign commerce, after having had three previous convictions for a violent felony or a serious drug offense, committed on occasions different from one another, in violation of Title 18, United States Code, sections 922(g)(1) and 924(e).

Defendant's Motion

In his initial memorandum of law in support of his motion, defendant claims that the evidence obtained at the time of his arrest should be suppressed because it was seized incident to a "warrantless encounter." Defendant states in his affirmation in support of his motion that:

> The police arrested me for no apparent reason. I had just arrived in Mount Vernon, NY, in a taxi, and I was standing on a public street when the police approached and arrested me. I was not engaged in any illegal or suspicious activity at the time of my arrest.

Def. Affirmation.

In its opposition papers, the Government argues that the Court should deny the motion

3

because the facts known to the officers at the time of the defendant's arrest, as described in the DiMase Affidavit, establish that the defendant's arrest was based on probable cause and the handgun and other evidence was lawfully seized in a search incident to arrest.

In his reply letter, defendant states:

> The defense does not dispute the proposition that the facts alleged in the Affirmation of Mount Vernon Police Detective Chris DiMase – if proven to the satisfaction of the Court at a hearing – would establish that the police had probable cause to arrest Mr. Garcia on October 12. However, the Government's contention that the issue can be settled without an evidentiary hearing should be swiftly rejected. Indeed, United States v. Pena, 961 F.2d 333 (2d Cir. 1992), remanding for suppression hearing . . . demonstrates that a hearing is required.

Reply at 1.

Law enforcement officials have probable cause to arrest absent a warrant "when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Boyd v. City of New York, 336 F.3d 72, 75-76 (2d Cir. 2003).

According to the DiMase Affidavit, arresting officers were aware that: (1) on October 12, 2007, a registered CI reported that earlier that day an individual later identified as the defendant, Rene J. Garcia, Jr., had shown the CI a handgun and offered to sell the handgun to the CI, see DiMase Aff. ¶ 2; (2) during a monitored, consensual phone call placed by the CI later that day, the defendant agreed to meet the CI that evening at the Gas Station in Mount Vernon, New York, to sell the CI a handgun for $500, see DiMase Aff. ¶ 3; (3) the defendant had indicated during the call that he planned to take a cab to the Gas Station, see DiMase Aff. ¶ 3; (4) that evening, an individual matching the description provided by the CI, arrived at the Gas Station in a livery cab, see DiMase Aff. ¶ 5; (5) the defendant was carrying a plastic bag when he exited the cab and met the CI at the

4

Gas Station, see DiMase Aff. ¶ 5; (5) the CI and the defendant, who was carrying the plastic bag, began walking across the street, toward the CI's car, see DiMase Aff. ¶ 5; and (6) when the officers approached the defendant and the CI, the defendant dropped the bag and stated that there was a gun in the bag and that he had found it in the taxi, see DiMase Aff. ¶ 6.

The Court agrees with the Government **and the defendant** that the facts set forth in the DiMase Affidavit establish that the police had probable cause to arrest defendant. See Gonzalez, 835 F.2d at 450-51 (citing Draper v. United States, 358 U.S. 307, 313 (1959); see also United States v. Gaviria, 805 F.2d 1108, 1115 (2d Cir. 1986). However, the Court does not agree that defendant has raised a factual issue with respect to the issue of probable cause to warrant a hearing.

A defendant seeking to suppress evidence bears the burden of demonstrating that there are disputed issues of fact that would justify an evidentiary hearing. See United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967). "An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question. United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992).

In United States v. Pena, Drug Enforcement Agents received a tip from a confidential informant that an automobile with Rhode Island license plates would be driven to a building located at 2625 Sedgwick Avenue, Bronx, New York, where the occupants of the car would purchase cocaine. The government's complaint asserted that the confidential informant "is highly reliable and has provided information in the past leading to the arrest of narcotics traffickers and the seizure of contraband," and that a three-building complex of which 2625 Sedgwick Avenue is a component "is known to the DEA as a place where narcotics trafficking takes place." Id. at 334.

5

The DEA established surveillance at the 2625 Sedgwick Avenue. At approximately 7:00 p.m. that evening, a black 1978 Chevrolet bearing Rhode Island license plates double-parked in front of the building. Two Hispanic males, Miguel Pena and Francisco Vasquez Santana, emerged from the car and entered the building. One hour later, Pena and Santana returned to the car. Pena was carrying a large white bag with black lettering that appeared to contain objects of significant weight. Santana entered the passenger seat of the automobile, while Pena entered the back seat. The DEA agents observed Pena "working in the back seat" for about ten minutes before returning to the driver's seat and pulling away. In the next block, the agents stopped the car. They observed that the white bag was now empty, and that a screwdriver was lying on the floor of the car where Pena had been working. The agent removed the panel covering the rear door near where Pena had been working, and found two packages of cocaine. Pena and Salazar were arrested. Id. at 334-35.

The Court of Appeals found that the conduct by Pena and Salazar – double-parking outside an apartment building, emerging with a package, and spending ten minutes or so in the back seat of a car engaged in some sort of activity before departure – was only suspicious when view in the context of the information provided by the confidential informant. Id. at 339. The Court held that because the reliability of the CI was only set forth in conclusory fashion in the complaint, there was "an adequate question with respect to the existence of probable cause for the search of the vehicle to warrant a hearing on the issue," and that "the district court abused its discretion in refusing to conduct such a hearing." Id.

It is true that Detective DeMase's affidavit in the present case and the Complaint in Pena are similar in that they both contain conclusory statements why the respective CIs should be relied upon. However, unlike the Pena case, where the CI told the DEA agents where and when a drug deal would

6

take place and the agents simply showed up, Detective DeMase and his fellow officers used the information provided by the CI to conduct their own investigation and sting operation. Upon receiving information from the CI that defendant was attempting to sell a gun, the Mount Vernon Police arranged for the controlled sale of the weapon, using the CI as their intermediary. The officers arranged and listened in on the telephone call between the CI and the defendant while the two negotiated the gun deal. Detective DeMase and his fellow officers new first hand from hearing the conversation between the CI and defendant that the sale would take place at a particular gas station in Mount Vernon and that the gun seller would arrive in a taxi– all of which would come to pass.

Defendant's "bare bones" affirmation stating that "I was arrested for no apparent reason" and that "I was not engaged in any illegal or suspicious activity at the time of my arrest," does nothing to undermine what Detective DeMase and his fellow officers knew from their own investigation and their own observation. Indeed, defendant's otherwise innocuous behavior – getting out of a livery cab at a gas station in Mount Vernon and walking up to the CI – was suspicious to the officers, not because of something they were told by the CI, but rather, what the officers heard the defendant say to the CI.

Accordingly, defendant's motion to suppress or, in the alternative, for a hearing on the suppression issue is denied.

This constitutes the decision and order of the Court.

April 25, 2008

_____
Colleen McMahon
U.S.D.J.

7

BY HAND TO:

Anna Margaret Skotko
U.S. Attorney's Office, White Plains
300 Quarropas Street
White Plains, NY 10601

Vincent Briccetti
Briccetti, Calhoun and Lawrence
81 Main Street
White Plains, NY 10601